# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JESUS DIAZ,                                    )
                                               )
        Plaintiff,                         )
                                               )
   v.                                    )   Civ. No. 06-550 SLR
                                               )
WARDEN THOMAS CARROLL, CMS                     )   JURY TRIAL
CORRECTIONAL MEDICAL SERVICE, CPL.             )   DEMANDED
MERSON, LEE ANNE DUNN, DEBORAH                 )
RODWELLER and CINDY ATALLIAN,                  )
                                               )
        Defendants.                        )

## MOTION OF DEFENDANTS, LEE ANNE DUNN AND DEBORAH RODWELLER, TO DISMISS PLAINTIFF'S COMPLAINT[1]

Defendants, Lee Anne Dunn and Deborah Rodweller, through their undersigned counsel, hereby respectfully move this Honorable Court to enter the attached Order, dismissing plaintiff's Complaint with prejudice and, in support thereof, aver as follows:

1.     Plaintiff filed a Complaint in this matter on September 5, 2006  alleging violations of his civil rights pursuant to 42 U.S.C. § 1983.  A copy of plaintiff's Complaint is attached hereto as Exhibit "1".

2.     In his Complaint, plaintiff alleges that while at Delaware Correctional Center ("DCC"), defendant, Lee Anne Dunn, did not provide adequate medical care for his eyes on September 13, 2005.  He also alleges defendant, Deborah Rodweller, did not provide adequate medical care for his eyes on April 26, 2006.  See Exhibit "1" at 10-12.

3.     In his Complaint, plaintiff states there is a prisoner grievance procedure at his institution of incarceration and he filed sick call slips and medical grievances; however, they are

---

[1] Moving defendants waive their right to file an Opening Brief and submit this Motion in lieu thereof pursuant to Local Rule 7.1.2.  However, moving defendants reserve the right to file a Reply Brief.

unresolved.  See Exhibit "1" at ¶ II (A) and (C)(1-2).  He makes no mention of appealing any of the adverse results he received on his grievances.  In fact, he signed an informal resolution regarding his September 6, 2005 grievance concerning his eye care.  See Informal Resolution attached as Exhibit "2".

5.      The plaintiff has failed to exhaust the administrative remedies available to him as required by the Prison Litigation Reform Act of 1996.  42 U.S.C. §1997e (a) provides that:

> No action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available to him are exhausted.

6.      "(P)risoners must now exhaust all 'available' remedies, not just those that meet federal standards."  Woodford v. Ngo, 126 S. Ct. 2378, 2383 (2006).  Proper exhaustion is required and this "demands compliance with an agency's deadlines and other critical procedural rules."  Id. at 2386.  The Courts have upheld the requirements of 42 U.S.C. §1997e (a), and stated that an inmate must first exhaust all the administrative remedies available to him/her prior to filing a §1983 action premised upon prison conditions.  Nyhuis v. Reno, 204 F.3d 65, 67 (3rd Cir. 2000) ("(T)he PLRA amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory-whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action"); see also Booth v. Churner, 206 F.3d 289, 294-295 (3d Cir. 2000), aff'd, 532 U.S. 731 (§1997e(a) mandates that exhaustion of administrative procedures is required, regardless of the relief offered.).

7.      Prison conditions have been defined to include the environment in which the prisoners live, the physical conditions of that environment and the nature of the services provided therein.  Booth, 206 F.3d at 291.

8.     The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance.  <u>See</u> Exhibit "3", at 6. An inmate must file a grievance with the Inmate Grievance Chairperson ("IGC") who then forwards it to the medical staff for review.  If action needs to be taken, the medical staff is required to attempt an informal resolution of the grievance with the inmate.  If the grievance cannot be resolved informally, the grievance is forwarded to the Medical Grievance Committee to conduct a hearing.  <u>Id</u>.

9.     If the medical grievance hearing decision does not satisfy the inmate, the inmate may complete a Medical Grievance Committee Appeal Statement which is then submitted to the Bureau Grievance Officer.  <u>See</u> Exhibit "3", at 7.  The Bureau Grievance Officer recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

10.     It is clear from the Complaint that the plaintiff is complaining about a prison condition which under 42 U.S.C. §1997e(a) required him to exhaust all the administrative remedies available to him.  It is equally clear from a review of the Complaint that the plaintiff never exhausted his administrative remedies made available by the Delaware Department of Corrections.  Plaintiff admits in his Complaint that he filed a medical grievance; however, there is no indication that a Medical Grievance Committee Appeal Statement was filed with regards to the medical grievance hearing decision or that any other medical grievances were filed.  <u>See</u> Exhibit "1" at ¶ II.  In addition, plaintiff signed an informal resolution for his September 6, 2005 grievance.  <u>See</u> Exhibit "2".

11.     42 U.S.C. §1997e(a) should be applied without exception to promote the policy behind the exhaustion requirement, which is to allow the Department of Corrections an opportunity to discover and correct mistakes and conserve judicial resources. <u>O'Neil v. Kearney,</u>

et al., C.A. No. 99-849-SLR, Memorandum Order (Robinson, J. November 6, 2000) (citing Nyhuis v. Reno, 204 F.3d 65, 75 (3rd Cir. 2000)).  (Attached as Exhibit "4").  At the time this action was filed procedural steps remained under the Department of Corrections Inmate Grievance Procedure that were not completed, thereby obviating any opportunity to discover and correct any alleged mistake and wasting judicial resources.  At the time Plaintiff's Complaint was filed, plaintiff had not appealed any of his grievances and even set forth in his Complaint that the grievances were unresolved.  Therefore, plaintiff's Complaint must be dismissed.

12.    In order to state a cognizable claim for violations of civil rights in connection with medical treatment, "a prisoner must allege and prove acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977).  A plaintiff must prove that the defendant either acted with "reckless disregard" or "actual intent" to disregard his medical condition to satisfy the "deliberate indifference" test set forth in Estelle.  Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985).  To show "deliberate indifference", a plaintiff must demonstrate that the individual attending to his medical condition consciously disregarded a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. 825, 838 (1994).  In addition, a plaintiff must allege that his medical condition is "serious".  Boring v Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987), cert. denied, 485 U.S. 991 (1988).  Mere medical malpractice does not give rise to a claim for a violation of the Eighth Amendment to the U.S. Constitution.  Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).  A claim for medical malpractice should be brought in state court under the applicable tort law, not in federal court.  Estelle, 429 U.S. at 107.

13.    The allegations, even if assumed to be true, do not constitute deliberate indifference to a serious medical condition in violation of the plaintiff's Eighth Amendment

rights.  Although plaintiff disagreed with the medical treatment he received, this alone does not support a claim for violation of his civil rights under 42 U.S.C. § 1983.  "Where the plaintiff has received some care, the inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim".  Norris v. Frame, 585 F.2d 1183, 1186 (3rd Cir. 1978).  Claims for inadequate medical care pursuant to the Eighth Amendment must be denied where the complaint is that the medical treatment did not comport with the inmate's requests since it is merely a disagreement over the proper means of treatment.  Boring, 833 F.2d at 473.

14.    Plaintiff has received medical treatment.  His medical conditions were not consciously disregarded on September 13, 2005 or April 26, 2006 and, in fact, he has received adequate medical treatment for the duration of his confinement at DCC including consultations and surgery with Gary I. Markowitz, M.D. with the Delaware Eye Center.  When plaintiff was incarcerated at DCC, he had visual acuity of 20/25 bilaterally.   Dr. Markowitz prescribed: Patanal on May 22, 2006 with five (5) refills; five 10 ml. single use injection vials of sterile Fluorouracil on July 10, 2006; and Percocet and Voltaren, with two (2) refills, on October 4, 2006.  Consultation Requests for ophthalmology appointments were requested on December 27, 2005, March 27, 2006 and June 1, 2006.  The Request on June 1, 2006 was also for an eye exam-dilated with surgical counseling.  Consultation Requests were also made for a spiral CT of the abdomen and pelvis on March 27, 2006 and to a GI specialist and for a repeat colonoscopy on March 30, 2006.  Following a consultation with Dr. Markowitz on May 22, 2006, a Consultation Request was submitted on August 18, 2006 for excision of pterysium.  On July 10, 2006, plaintiff underwent a pre-operative appointment with Dr. Markowitz.   On October 3, 2006, plaintiff underwent excision of pterysium of the left eye which was performed by Dr. Markowitz.

On October 4, 2006, he was seen by Dr. Markowitz for follow-up treatment.  Plaintiff's medical records are attached as Exhibit "5".

15.    On October 19, 2006, plaintiff filed a medical sick call slip complaining of his left eye still hurting following surgery.  On November 17, 2006, he received treatment from Dr. Markowitz and was informed he could wear sunglasses and he would be seen in follow-up in three (3) months.  He also filed a medical sick call slip on December 12, 2006 requesting refills of his medication and these were requested on December 14, 2006.  Please refer to medical records attached as Exhibit "6".

16.    Plaintiff's complaints are not, and could not be based on the treatment documented in the medical records, that he did not receive care.  Plaintiff has disagreements with the care he has received and this is not a claim that is actionable under the Eighth Amendment.

17.    A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.  Fed. R. Civ. P. 12(b)(6).  Even a pro se litigant must plead sufficient facts to sustain a legal claim.  See Riddle v. Mondragon, 83 F. 3d 1197, 1202 (10th Cir. 1996). As a matter of law, plaintiff's claims against defendants, Lee Anne Dunn and Deborah Rodweller, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

WHEREFORE, defendants, Lee Anne Dunn and Deborah Rodweller, move this Honorable Court to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


BY: ___*/s/ Eric Scott Thompson*_____
        KEVIN J. CONNORS, ESQ.
        DE Bar ID: 2135
        ERIC SCOTT THOMPSON, ESQ.
        DE Bar ID: 4633
        1220 North Market Street, 5th Fl.
        P.O. Box 8888
        Wilmington, DE 19899-8888
        Attorneys for Defendants, Lee Anne Dunn
        and Deborah Rodweller.

DATED: March 12, 2006

\15_A\LIAB\ESTHOMPSON\LLPG\413625\ESTHOMPSON\13252\00177

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two (2) copies of the **MOTION OF**

**DEFENDANTS, LEE ANNE DUNN AND DEBORAH RODWELLER, TO DISMISS**

**PLAINTIFF'S COMPLAINT** have been served by regular mail to:

Jesus Diaz
SBI # 474251
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:  _/s/ Eric Scott Thompson_
KEVIN J. CONNORS, ESQ.
DE Bar ID: 2135
ERIC SCOTT THOMPSON, ESQ.
DE Bar ID: 4633
1220 North Market Street, 5th Fl.
P.O. Box 8888
Wilmington, DE 19899-8888
Attorneys for Defendants, Lee Anne Dunn
and Deborah Rodweller.

DATED:  March 12, 2007

\15_A\LIAB\ESTHOMPSON\LLPG\413625\ESTHOMPSON\13252\00177

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JESUS DIAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-550 SLR |
| | ) | |
| WARDEN THOMAS CARROLL, CMS | ) | JURY TRIAL |
| CORRECTIONAL MEDICAL SERVICE, CPL. | ) | DEMANDED |
| MERSON, LEE ANNE DUNN, DEBORAH | ) | |
| RODWELLER and CINDY ATALLIAN, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

ON THIS _____ day of _____ , 2007, having considered the Motion of

Defendants, Lee Anne Dunn and Deborah Rodweller, to Dismiss Plaintiff's Complaint, and all

Responses thereto, and there being good cause to grant such Motion,

IT IS ORDERED THAT all claims against Defendants, Lee Anne Dunn and Deborah

Rodweller, are hereby dismissed with prejudice pursuant to Federal Rule of Civil Procedure

12(b)(6).


_____

The Honorable Sue L. Robinson


\15_A\LIAB\ESTHOMPSON\LLPG\413694\ESTHOMPSON\13252\00177

EXHIBIT 1

(Rev. 5/95)

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(1) Jesus Diaz #474251
(Name of Plaintiff)        (Inmate Number)

D.C.C. 1181 Paddock Rd.
(Complete Address with zip code)

(2) Smyrna DE, 19977
(Name of Plaintiff)        (Inmate Number)

06 - 550

_____
(Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1) Thomas Carroll (warden)
(2) C.M.S. Correction Medical Service
(3) Cpl. Merson, I.G.C.
(Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

(Case Number)
( to be assigned by U.S. District Court)

CIVIL COMPLAINT

• • Jury Trial Requested

I.    PREVIOUS LAWSUITS

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
including year, as well as the name of the judicial officer to whom it was assigned:

NONE _____

_____

_____

_____

_____

_____

(1.)

II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?    •  • Yes   •  • No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?    •  • Yes   •  • No

C.    If your answer to "B" is Yes:

    1.    What steps did you take? I filed sick call slips and medical grievances

    2.    What was the result? Unresolved, plaintiff is pain with degenerative loss of eyesight.

D    If your answer to "B" is No, explain why not: N/A

III.    DEFENDANTS (in order listed on the caption)

(1) Name of first defendant: Thomas Carroll
    Employed as Warden at D.C.C.
    Mailing address with zip code: Department of Correction
    245 McKee Rd Dover De. 19901

(2) Name of second defendant: C.M.S. Correction Medical Service
    Employed as Medical Staff at D.C.C.
    Mailing address with zip code: Correction Medical Service
    1201 College Park Dr Suite 101 Dover De 19904

(3) Name of third defendant: Cpl. Merson
    Employed as IGC Chairman at D.C.C.
    Mailing address with zip code: Department of Correction
    245 McKee Rd Dover De. 19901

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

<u>Defendants</u>

(4). Ms. Lee Anne Dunn, employed as medical investigating personel for C.M.S. at D.C.C. 1181 Paddock Road Smyrna, Delaware 19977

(5.) Ms. Deborah Rodweller, employed as medical investigating personel at D.C.C. 1181 Paddock Road Smyrna Delaware 19977

(6.) Ms. Cindy Atallian, employed as a Counselor at D.C.C. 1181 Paddock Road Smyrna Delaware 19977

The plaintiff is holding all the defendants in this civil complaint liable in their individual and official capacity due to the violation of his 8th and 14th constitutional amendment rights.

(5)

## IV. STATEMENT OF CLAIM

Plaintiff claims Thomas Carroll, is the warden of D.C.C. and he is being held liabie in his individual and official capacity. Plaintiff claims the warden lacks education and trainning and is constantly violating plaintiff's 8th and 14th constitutional amendment rights by failing to provide adequate medical care or an adequate medical grievance procedure.

Plaintiff claims breach of contract due to Thomas Carroll knowingly and willingly with reckless disregard to plaintiff's health, did enter into a medical contract with C.M.S. knowing the contract was going to be broken, thereby violating 8th and 14th constitutional amendment rights

(14)

Plaintiff claims Thomas Carroll has knowingly, willingly and intentional with a reckless disregard for the plaintiff's health failed and refuse to provide plaintiff with adequate medical care, thereby violating his 8th and 14th constitutional amendment rights and further causing pain and loss of sight in both eyes.

Plaintiff claims Thomas Carroll has knowingly, willingly and intentional failed to do criminal back ground checks on hired employees and this negligence has caused people with criminal records to work at D.C.C. and loose plaintiff's sick call slips and grievance forms thereby causing pain and loss of sight in both eyes and this was a direct violation of plaintiff's 8th and 14th constitutional amendment rights.

(5.)

Plaintiff claims C.M.S. Correction Medical Service did knowingly willingly and intentionally with a reckless disregard to plaintiff's health, did breach the contract to provide adequate medical care to plaintiff, thereby violating his 8th and 14th constitutional amendment rights.

Plaintiff claims C.M.S. did knowingly willingly and intentionally refused and delayed giving plaintiff adequate medical care to his eyes, thereby creating irrepairable damage to the plaintiff's eyes causing loss of sight in both eyes.

Plaintiff claims C.M.S. did knowingly willingly and intentionally refused and delayed to give plaintiff medical care due to C.M.S. not wanting to spend money for plaintiff's health care.

(6.)

Plaintiff claims C.M.S. has knowingly willingly and intentionally failed to do criminal background checks or drug testing on employees and this negligence has caused people with criminal records and drug addicts to work at D.C.C. and as a direct result of C.M.S.'s negligence, Plaintiff has suffered and continues to suffer from loss of sight in both eyes and pain daily

Plaintiff claims medical malpractice against C.M.S. and D.C.C. due to not getting adequate medical care due to C.M.S. and D.C.C. trying to save money by not giving plaintiff adequate medical care, thereby causing pain and loss of sight in both eyes which also violated plaintiff's 8th and 14th constitutional amendment rights, from 8/29/03 until 8/29/06 C.M.S. has constantly denied and lost plaintiff's paper work for proper medical care.

(7.)

Plaintiff claims Cp. Merson is head Chairman of the inmates grievance committee and lacks education and training to be head chairman of the grievance committee due to her failure to process the grievance in accordance with the laws of Delaware and the policies and procedures of D.C.C. from 8/29/03 until the filing of this complaint

Plaintiff claims Cp. Merson did intentionally, Knowingly, willingly with reckless disregard to plaintiff's health continue to loose and/or fail to process plaintiff's medical grievances, thereby violating his 8th and 14th constitutional amendment right, which has caused his medical care to be delayed, this Negligence has left plaintiff in pain and loss of sight in both eyes

(8.)

Plaintiff claims Cp. Merson, is negligent and incompetent and has intentionally Knowingly, willingly, with a reckless disregard to plaintiff's health block and delay the surgery which has already been ordered thereby violating plaintiff's 8th and 14th constitutional amendment rights

Plaintiff claims Cp. Merson did Knowingly intentionally and willingly with a reckless disregard for plaintiff's health failed and refused to honor the request of Cindy Atallian to help plaintiff take care of his medical condition concerning his eyes from 8/29/03 until Now this is a direct violation of plaintiff's 8th and 14th constitutional amendment rights, thereby causing paining and suffering as well as damage and loss of sight in both eyes.

(9.)

Plaintiff claims Ms. Lee Anne Dunn, was employed as a medical investigating person for C.M.S., and did knowingly willingly and intentional breach the contract to provide plaintiff with adequate medical care, on or about 9/13/05

Plaintiff claims Ms. Lee Anne Dunn, lacks education and trainning to be a medical investigating person for C.M.S. at D.C.C. because she refused to follow proper procedures so plaintiff could get adequate medical care for his eyes on or about 9/13/05

Plaintiff claims Ms. Lee Anne Dunn did intentionally knowingly and willingly fail to investigate plaintiff's medical condition, thereby violating plaintiff's 8th and 15th constitutional amendment rights, and caused pain with loss of sight in both eyes.

(10.)

Plaintiff claims Ms Lee Anne Dunn did intentionally knowingly and willingly mislead the grievance board at D.C.C. on 9/13/05 by stating she would make sure Plaintiff would begin to get adequate medical care for his eyes, but plaintiff havent, thereby causing him pain and loss of sight in both eyes.

Plaintiff claims Ms Lee Anne Dunn did intentionally knowingly and willingly with a reckless disregard for plaintiffs health, misplace, loose, and stop plaintiffs grievances from going forward so he could get adequate medical care for his eyes, this caused loss of eye sight and pain thereby violating his 8th and 14th constitutional amendment rights.

(11.)

Plaintiff claims Ms. Deborah Rodweiler was employed as a medical investigator for C.M.S. when she knowingly willingly and intentionally breach the contract to provide plaintiff with adequate medical care on or about 4/26/06

Plaintiff claims Ms. Deborah Rodweller lacks education and trainning to be a medical investigator for C.M.S. at D.C.C. and due to Ms. Deborah's lack of education and trainning plaintiff has suffered and continues to suffer from pain and loss of sight in both eyes

Plaintiff claims Deborah Rodweller did intentionally knowingly and willingly failed to investigate plaintiff's medical condition, thereby violating plaintiff's 8th and 14th constitutional amendment rights with pain and loss of sight in both eyes.  (12.)

Plaintiff claims Ms. Deborah Rod-weller did intentionally, knowingly, and willingly mislead the grievance board at D.C.C. on 4/26/06 by stating she would make sure plaintiff would begin to get adequate medical care for his eyes, but plaintiff havent, thereby causing him pain and irreparable damage in both eyes and loss of sight in both eyes.

Plaintiff claims Ms. Deborah Rodweller did intentionally, knowingly and willingly with a reckless disregard for plaintiff's health, when she misplaced, loss and/or stopped plaintiff's grievances from going forward, so he could get adequate medical care for his eyes, this caused loss of eyesight, pain and irreparable damage in both eyes thereby violating his 8th and 14th constitutional amendment rights.

(13.)

Plaintiff claims Ms. Cindy Atallian was counselor at D.C.C., but she lacks education and training to be a counselor, due to her failure to follow policies and procedures of D.C.C.

Plaintiff claims Ms. Cindy Atallian failed to honor her position when she violated plaintiff's 8th and 14th constitutional amendment rights

Plaintiff claims Ms. Cindy Atallian interferred with the medical process which caused plaintiff's medical problem to be delayed and denied, which has also caused plaintiff pain and loss of sight in both eyes

(14.)

Plaintiff claims Cindy Atallian did intentionally knowingly and willingly with a reckless disregard for Plaintiff's health failed and/or refused to report the D.C.C. and C.M.S. officials to the propper Delaware authorities due to Plaintiff not being provided with adequate care, this was a direct violation of plaintiff's 8th and 14th constitutional amendment rights thereby causing pain and loss of sight in both eyes.

Plaintiff claims Cindy Atallian did intentionally knowingly and willingly with a reckless disregard for plaintiff's health did mislead the plaintiff by stating she would help him get adequate medical care, so plaintiff would delay in filing this civil complaint, which caused pain and irreparable damage in both eyes

(15.)

IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1. Plaintiff claims Breach of Contract against D.C.C. and C.M.S. for failing to provide adequate medical care to plaintiff, thereby violating plaintiff's 8th and 14th constitutional amendment rights.

2. Plaintiff claims medical malpractice due to C.M.S. delaying and denying him adequate medical care which is causing him pain and to loose eyesight in both eyes, which violates his 8th and 14th constitutional amendment rights

3. Plaintiff claims inadequate medical grievance procedure, which has lost and delayed the grievance process, therefore plaintiff has no other remedy but to go to court

V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. WHEREFORE, plaintiff humbly pray's this honorable court to grant declaratory judgement for plaintiff against the defendants due to the violation of plaintiff's 8th and 14th constitutional amendment rights.

16

2. Further grant plaintiff punitive damages in the amount of # 100.000.⁰⁰ ONE HUNDRED THOUSAND DOLLARS againts each defendant involved in this civil complaint

3. Further award:ng compensatory damages in the amount of $100.000.⁰⁰ ONE HUNDRED THOUSAND DOLLARS As well as statutory damages and investigation and attorney fees and all other relief the Court deems just!

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __28__ day of __August__ 2006.

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

17

## Certificate of Service

I, _Jesus Diaz_____, hereby certify that I have served a true and correct cop(ies) of the attached: _Civil Complaint, 1983_

_____ upon the following parties/person (s):

8 copies

TO: _District Court Clerk_
_U.S. District Court_
_Lockbox 18_
_Wilmington DE 1980,_
_____

TO: _____
_____
_____
_____
_____

TO: _____
_____
_____
_____

TO: _____
_____
_____
_____

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977, postage to be paid by the Dept. Of Corrections.

On this _28_ day of _August_____ ___, 200_6_

_Jesus Diaz_

(18)

Office of the clerk
United States District Court
844 N. King Street, Lockbox 18
Wilmington, Delaware 19801-3570

I/M _Jesus_ Díaz
SBI# 477251   UNIT_____
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JESUS DIAZ,                                              )
                                                        )
              Plaintiff,                                )
                                                        )
       v.                                               )        Civ. No. 06-550 SLR
                                                        )
WARDEN THOMAS CARROLL, CMS                              )        JURY TRIAL
CORRECTIONAL MEDICAL SERVICE, CPL.                      )        DEMANDED
MERSON, LEE ANNE DUNN, DEBORAH                          )
RODWELLER and CINDY ATALLIAN,                           )
                                                        )
              Defendants.                               )

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Jesus Diaz v. Warden Thomas Carroll, et al.
C. A. NO.: 06-550 SLR

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:   /s/ Kevin J. Connors
KEVIN J. CONNORS, ESQUIRE
I.D. No. 2135
ERIC SCOTT THOMPSON, ESQUIRE
I.D. No. 4633
1220 N. Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE  19899
(302) 552-4302
Attorney for Defendants,
Lee Ann Dunn and Deborah Rodweller

DATED: March 12, 2007
\15_A\LIAB\ES THOMPSON\LLPG\389990\PASHEL BY\15000\15000

EXHIBIT 3

| STATE OF DELAWARE | PROCEDURE NUMBER: | | PAGE: |
|---|---|---|---|
| BUREAU OF PRISONS | 4-4 | | 1 OF 7 |
| | RELATED ACA STANDARDS: 36 | | |
| PROCEDURE MANUAL | | | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS | | | |
| EFFECTIVE DATE: Revised 5/15/98 | | | |

I.   AUTHORITY:   DOC Policy 4.4

II.   PURPOSE:

To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system.   Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed.
NOTE:   Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III.   APPLICABILITY:

All BOP employees, volunteers, persons or organizations conducting business with the BOP; all inmates under BOP custody or supervision.

IV.   DEFINITIONS:

A.   Bureau Grievance Officer (BGO):   A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

B.   Emergency Grievance:   An issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

C.   Grievance:   A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | 2  OF  7 |

D.   Inmate Grievance Chair (IGC):  An institutional employee designated to handle inmate grievances.

E.   Inmate Grievance Procedure (IGP):  The formal process provided to inmates to resolve disputes.

F.   Outside Reviewer:  An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H.   Resident Grievance Committee (RGC):  A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I.   Reprisal:  Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J.   Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

        Health Services Administrator
        Director of Nursing
        Charge Nurse
        Chief Medical Officer
        Medical Records Clerk
        Mental Health Counselor
        Chief Dental Officer
        Dental Assistant

V.   PROCEDURE:

1.   Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2.   All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP.  Inmate complaints regarding policies and conditions must be within DOC jurisdiction.  This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally.  NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | 4 OF 7 |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

### Level I (Informal Resolution):

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

### Level II (RGC Recommendation/Warden's Decision):

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

### Level III (The Final Decision):

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: | |
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | 4.4 | 6 |

recommendation.  Decisions by the Bureau Chief of Prisons a final and not open to grievant interpretation.  The Bureau ( of Prisons will return his final decision and the grievance to the IGC for closure and monitoring for issues of complianc

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or psychological inmate injury shall be addressed immediately by t Warden/Warden's Designee.  A copy of the grievance shall be se to the IGC upon receipt by the Warden/Warden's Designee.  And th Warden/Warden's Designee shall respond within one calendar day. Grievant appeals of the Warden/Warden's Designee decision will h decided by the Bureau Chief of Prisons within one calendar day upon receipt of the emergency appeal.  NOTE: If the Warden/Warden's Designee should determine that the grievance doe not meet the emergency criteria, the grievance shall be returned to the inmate for processing through the normal IGP process steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance Chairperson (IGC) at the respective institution on Form #585. If, by chance, an inmate sends a grievance directly to the medical services contractual staff, they are to forward it first to the IGC who will log it in the institution's grievance log and then return it to the medical services contractual staff for action.

The appropriate medical staff will review the grievance and denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal resolution with the inmate, upon discussion over the treatment defined on the Medical Log Form.  If the Medical Grievance is resolved the inmate acknowledges this by his signature on Form #585 Informal Resolution.  This signed form is forwarded to the IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical Grievance Committee hearing which will not include any medical services contractual staff previously involved in the informal resolution process.  The IGC and the inmate must be present at this hearing.

Resolution closes the case; failure to resolve the case results in the inmate completing the MGC Appeal Statement section of Form #585.  Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 7 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO). The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

Universal Grievance:

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

Institutional Transfer:

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded. If circumstance requires immediate transfer, the RGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II. The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review. If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review. Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

Appeals:

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal. This form must be given to the IGC who is responsible for tracking the status of each grievance. The IGC will forward the appeal and grievance file to the BGO. Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level. NOTE: The Bureau Chief of Prisons decisions are final and not appealable.

Attachments

EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NOV 08 2000

William E. O'Neil,       )
                         )
            Plaintiff,   )
                         )
    v.                   )
                         )   C.A. No. 99-849-SLR
Rick Kearney, Jean Snyder, )
Dr. Weiss, Karen Clark,  )
                         )
            Defendants.  )

## MEMORANDUM ORDER

### I.    INTRODUCTION

William E. O'Neil ("plaintiff") is a Delaware prison inmate
incarcerated at Sussex Correctional Institution ("SCI") in
Georgetown, Delaware.  The defendants are the prison warden and
three employees of Prison Health Services (collectively
"defendants").  Plaintiff filed this action under 42 U.S.C. §
1983, asserting that defendants violated his Eighth Amendment
right to be free from cruel and unusual punishment for the
defendants' failure to protect the plaintiff from an attack by
another inmate.  Plaintiff seeks compensatory and punitive
damages.  Procedurally, the court is faced with motions to
dismiss from defendants.

### II.   FACTS

The basis for plaintiff's complaint is the placement of a
violent inmate into his infirmary room on November 8, 1997.
Plaintiff was in the SCI infirmary, confined to a wheelchair, for

problems with his feet and legs. Plaintiff's complaint states
that at 4:00 P.M. another inmate, Michael Hall, was brought into
the room with plaintiff. Apparently, Hall had assaulted another
inmate and was transferred to the infirmary for observation.
Plaintiff alleges that Hall has had similar problems in the past
as a result of his failure to take medication. The complaint
maintains that defendant Karen Clark, a psychologist in the ward,
was aware of Hall's problems and directed Hall to be placed in
the room with plaintiff anyway. Plaintiff further maintains that
Dr. Weiss, the mental health supervisor, had been treating Hall
and ordered him to be observed prior to these assaults. At
approximately 3:00 A.M., plaintiff was awakened by kicking and
beating from Hall. As a result, plaintiff required ten stitches.

Plaintiff contends that defendants violated his Eighth
Amendment rights by acting with reckless disregard for his safety
when they placed a violent inmate in his room.

Defendants move to dismiss the complaint for plaintiff's
failure to exhaust administrative remedies as required by 42
U.S.C. § 1997e(a).[1]

---

[1] Defendants also argue that plaintiff has failed to allege
facts which would state a claim for a violation of the Eighth
Amendment and that plaintiff's claim is barred by the applicable
statute of limitations. However, because the case is being
dismissed for plaintiff's failure to exhaust administrative
remedies, no discussion of the merits of plaintiff's claim is
warranted.

III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §

1997e(a), provides that

> [n]o action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as available are
> exhausted.

(amended by Pub.L. 104-134, Title I, § 101(a), 110 Stat. 1321-71

(1996)). 18 U.S.C. § 2636(g) defines "prison conditions" as

"...the effects of actions by government officials on the lives

of persons confined in prison...." Actions under this clause

relate to "the environment in which prisoners live, the physical

conditions of that environment, and the nature of the services

provided therein." Booth v. Churner, C.O., 206 F.3d 289, 291

(3rd. Cir. 2000).

Taking all allegations in plaintiff's complaint as true, the

defendants' actions fit under the purview of the statute. The

placement of a violent prisoner in plaintiff's room is certainly

an action that affected the environment in which he lived.

Because the action complained of is a "prison condition,"

plaintiff is required to exhaust administrative remedies, if any

exist, before filing a complaint in federal court.

In the complaint, plaintiff acknowledges that a prisoner

grievance procedure exists but did not file a grievance because

3

"grievance for prisoner and institution matters."[2]  (D.I. 2)  In

Booth, the court held that prisoners must exhaust administrative

remedies available to them prior to filing a § 1983 action,

whether or not the remedies provide the inmate-plaintiff with the

relief desired.  206 F.3d at 291 (citing Nyhuis v. Reno, 204 F.3d

65, 78 (3rd. Cir. 2000)).  By applying § 1997e(a) without

exception, the policies underlying the exhaustion requirements

are promoted, that is, the agency involved is given the

opportunity to discover and correct its own mistakes and also

conserve judicial resources.  Nyhuis, 204 F.3d at 75.

V.    CONCLUSION

Therefore, at Wilmington this 6th day of November, 2000,

IT IS ORDERED that the motions to dismiss filed on behalf of

defendants Rick Kearney, Jean Snyder, Dr. Weiss, and Karen Clark

are granted.

_____
United States District Judge

---

[2] Presumably this statement evidences that plaintiff thought
the grievance process was only for prisoner and institution
matters.

4

EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JESUS DIAZ, )
 )
    Plaintiff, )
 )
  v. ) Civ. No. 06-550 SLR
 )
WARDEN THOMAS CARROLL, CMS ) JURY TRIAL
CORRECTIONAL MEDICAL SERVICE, CPL. ) DEMANDED
MERSON, LEE ANNE DUNN, DEBORAH )
RODWELLER and CINDY ATALLIAN, )
 )
    Defendants. )

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Jesus Diaz v. Warden Thomas Carroll, et al.
C. A. NO.: 06-550 SLR

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:   /s/ Kevin J. Connors
KEVIN J. CONNORS, ESQUIRE
I.D. No. 2135
ERIC SCOTT THOMPSON, ESQUIRE
I.D. No. 4633
1220 N. Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE  19899
(302) 552-4302
Attorney for Defendants,
Lee Ann Dunn and Deborah Rodweller

DATED: March 12, 2007
\15_A\LAB\ESTHOMPSON\LLPG\389990\PASHELBY\15000\:5000

EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JESUS DIAZ,                                    )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )          Civ. No. 06-550 SLR
                                               )
WARDEN THOMAS CARROLL, CMS                     )          JURY TRIAL
CORRECTIONAL MEDICAL SERVICE, CPL.             )          DEMANDED
MERSON, LEE ANNE DUNN, DEBORAH                 )
RODWELLER and CINDY ATALLIAN,                  )
                                               )
                    Defendants.                )

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Jesus Diaz v. Warden Thomas Carroll, et al.
C. A. NO.: 06-550 SLR

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:   _/s/ Kevin J. Connors_
KEVIN J. CONNORS, ESQUIRE
I.D. No. 2135
ERIC SCOTT THOMPSON, ESQUIRE
I.D. No. 4633
1220 N. Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE  19899
(302) 552-4302
Attorney for Defendants,
Lee Ann Dunn and Deborah Rodweller

DATED: March 12, 2007
\15_A\LIAB\ESTHOMPSON\LLPG\389090\PASHELBY\15000\15000