## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JESUS DIAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-550 SLR |
| | ) | |
| WARDEN THOMAS CARROLL, CMS | ) | JURY TRIAL |
| CORRECTIONAL MEDICAL SERVICE, CPL. | ) | DEMANDED |
| MERSON, LEE ANNE DUNN, DEBORAH | ) | |
| RODWELLER and CINDY ATALLIAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION OF DEFENDANT, CMS, TO DISMISS PLAINTIFF'S COMPLAINT[1]

Defendant, CMS, through its undersigned counsel, hereby respectfully moves this Honorable Court to enter the attached Order, dismissing plaintiff's Complaint with prejudice and, in support thereof, avers as follows:

1.     Plaintiff filed a Complaint in this matter on September 5, 2006 alleging violations of his civil rights pursuant to 42 U.S.C. § 1983.  A copy of plaintiff's Complaint is attached hereto as Exhibit "1".

2.     In his Complaint, plaintiff alleges that while at Delaware Correctional Center ("DCC"), defendant, CMS, breached its contract to provide adequate medical care to Plaintiff, intentionally refused or delayed giving Plaintiff adequate medical care and failed to do criminal background checks and drug testing on employees.  See Exhibit "1" at 6-7.

3.     In his Complaint, plaintiff states there is a prisoner grievance procedure at his institution of incarceration and he filed sick call slips and medical grievances; however, they are

---

[1] Moving defendants waive their right to file an Opening Brief and submit this Motion in lieu thereof pursuant to Local Rule 7.1.2.  However, moving defendants reserve the right to file a Reply Brief.

unresolved.  See Exhibit "1" at ¶ II (A) and (C)(1-2).  He makes no mention of appealing any of the adverse results he received on his grievances.  In fact, he signed an informal resolution regarding his September 6, 2005 grievance concerning his eye care.  See Informal Resolution attached as Exhibit "2".

4.    The plaintiff has failed to exhaust the administrative remedies available to him as required by the Prison Litigation Reform Act of 1996.  42 U.S.C. §1997e (a) provides that:

> No action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available to him are exhausted.

5.    "(P)risoners must now exhaust all 'available' remedies, not just those that meet federal standards."  Woodford v. Ngo, 126 S. Ct. 2378, 2383 (2006).  Proper exhaustion is required and this "demands compliance with an agency's deadlines and other critical procedural rules."  Id. at 2386.  The Courts have upheld the requirements of 42 U.S.C. §1997e (a), and stated that an inmate must first exhaust all the administrative remedies available to him/her prior to filing a §1983 action premised upon prison conditions.  Nyhuis v. Reno, 204 F.3d 65, 67 (3rd Cir. 2000) ("(T)he PLRA amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory-whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action"); see also Booth v. Churner, 206 F.3d 289, 294-295 (3d Cir. 2000), aff'd, 532 U.S. 731 (§1997e(a) mandates that exhaustion of administrative procedures is required, regardless of the relief offered.).

6.    Prison conditions have been defined to include the environment in which the prisoners live, the physical conditions of that environment and the nature of the services provided therein.  Booth, 206 F.3d at 291.

7.      The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance.  <u>See</u> Exhibit "3", at 6. An inmate must file a grievance with the Inmate Grievance Chairperson ("IGC") who then forwards it to the medical staff for review.  If action needs to be taken, the medical staff is required to attempt an informal resolution of the grievance with the inmate.  If the grievance cannot be resolved informally, the grievance is forwarded to the Medical Grievance Committee to conduct a hearing.  <u>Id</u>.

8.      If the medical grievance hearing decision does not satisfy the inmate, the inmate may complete a Medical Grievance Committee Appeal Statement which is then submitted to the Bureau Grievance Officer.  <u>See</u> Exhibit "3", at 7.  The Bureau Grievance Officer recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

9.      It is clear from the Complaint that the plaintiff is complaining about a prison condition which under 42 U.S.C. §1997e(a) required him to exhaust all the administrative remedies available to him.  It is equally clear from a review of the Complaint that the plaintiff never exhausted his administrative remedies made available by the Delaware Department of Corrections.  Plaintiff admits in his Complaint that he filed a medical grievance; however, there is no indication that a Medical Grievance Committee Appeal Statement was filed with regards to the medical grievance hearing decision or that any other medical grievances were filed.  <u>See</u> Exhibit "1" at ¶ II.  In addition, plaintiff signed an informal resolution for his September 6, 2005 grievance.  <u>See</u> Exhibit "2".

10.     42 U.S.C. §1997e(a) should be applied without exception to promote the policy behind the exhaustion requirement, which is to allow the Department of Corrections an opportunity to discover and correct mistakes and conserve judicial resources. <u>O'Neil v. Kearney,</u>

et al., C.A. No. 99-849-SLR, Memorandum Order (Robinson, J. November 6, 2000) (citing Nyhuis v. Reno, 204 F.3d 65, 75 (3rd Cir. 2000)). (Attached as Exhibit "4"). At the time this action was filed procedural steps remained under the Department of Corrections Inmate Grievance Procedure that were not completed, thereby obviating any opportunity to discover and correct any alleged mistake and wasting judicial resources. At the time Plaintiff's Complaint was filed, plaintiff had not appealed any of his grievances and even set forth in his Complaint that the grievances were unresolved. Therefore, plaintiff's Complaint must be dismissed.

11.    Pursuant to Title 18, Chapter 68, specifically, 18 Del. C. § 6853 (a)(1), "no healthcare negligence lawsuit shall be filed in this State unless the complaint is accompanied by… [a]n affidavit of merit, signed by an expert witness….". Medical negligence is defined as "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient." 18 Del. C. § 6801 (7) (emphasis added). Since this is a healthcare negligence lawsuit, Plaintiff is statutorily *required* to file an Affidavit of Merit, signed by an expert witness along with that expert's Curriculum Vitae, stating there are reasonable grounds to believe that there has been healthcare medical negligence committed by the defendant. McBride v. Shipley Manor Health Care, et. al., 2005 Del. Super. LEXIS 87 (Del. Super. Ct. 2005) (Attached as Exhibit "7").

12.    Since Plaintiff's Complaint was not accompanied by an affidavit of merit, his claims that CMS breached a contract to provide adequate medical care must be dismissed.

13.    In order to state a cognizable claim for violations of civil rights in connection with medical treatment, "a prisoner must allege and prove acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977). A plaintiff must prove that the defendant either

acted with "reckless disregard" or "actual intent" to disregard his medical condition to satisfy the "deliberate indifference" test set forth in Estelle. Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). To show "deliberate indifference", a plaintiff must demonstrate that the individual attending to his medical condition consciously disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 838 (1994). In addition, a plaintiff must allege that his medical condition is "serious". Boring v Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987), cert. denied, 485 U.S. 991 (1988). Mere medical malpractice does not give rise to a claim for a violation of the Eighth Amendment to the U.S. Constitution. Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). A claim for medical malpractice should be brought in state court under the applicable tort law, not in federal court. Estelle, 429 U.S. at 107.

14. The allegations, even if assumed to be true, do not constitute deliberate indifference to a serious medical condition in violation of the plaintiff's Eighth Amendment rights. Although plaintiff disagreed with the medical treatment he received, this alone does not support a claim for violation of his civil rights under 42 U.S.C. § 1983. "Where the plaintiff has received some care, the inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim". Norris v. Frame, 585 F.2d 1183, 1186 (3rd Cir. 1978). Claims for inadequate medical care pursuant to the Eighth Amendment must be denied where the complaint is that the medical treatment did not comport with the inmate's requests since it is merely a disagreement over the proper means of treatment. Boring, 833 F.2d at 473.

15. Plaintiff has received medical treatment. His medical conditions were not consciously disregarded on September 13, 2005 or April 26, 2006 and, in fact, he has received adequate medical treatment for the duration of his confinement at DCC including consultations and surgery with Gary I. Markowitz, M.D. with the Delaware Eye Center. Dr. Markowitz

prescribed: Patanal on May 22, 2006 with five (5) refills; five 10 ml. single use injection vials of sterile Fluorouracil on July 10, 2006; and Percocet and Voltaren, with two (2) refills, on October 4, 2006.  Consultation Requests for ophthalmology appointments were requested on December 27, 2005, March 27, 2006 and June 1, 2006.  The Request on June 1, 2006 was also for an eye exam-dilated with surgical counseling.  Consultation Requests were also made for a spiral CT of the abdomen and pelvis on March 27, 2006 and to a GI specialist and for a repeat colonoscopy on March 30, 2006.  Following a consultation with Dr. Markowitz on May 22, 2006, a Consultation Request was submitted on August 18, 2006 for excision of pterysium.  On July 10, 2006, plaintiff underwent a pre-operative appointment with Dr. Markowitz.  On October 3, 2006, plaintiff underwent excision of pterysium of the left eye which was performed by Dr. Markowitz. On October 4, 2006, he was seen by Dr. Markowitz for follow-up treatment.  Plaintiff's medical records are attached as Exhibit "5".

16.    On October 19, 2006, plaintiff filed a medical sick call slip complaining of his left eye still hurting following surgery.  On November 17, 2006, he received treatment from Dr. Markowitz and was informed he could wear sunglasses and he would be seen in follow-up in three (3) months.  He also filed a medical sick call slip on December 12, 2006 requesting refills of his medication and these were requested on December 14, 2006.  Please refer to medical records attached as Exhibit "6".

17.    Plaintiff's complaints are not, and based on the treatment documented in the medical records could not be, that he did not receive care.  Plaintiff has disagreements with the care he has received; however, this is not a claim that is actionable under the Eighth Amendment.

18.    CMS may only be held liable for a policy or custom that demonstrates deliberate indifference to plaintiff's serious medical needs.  Miller v. Correctional Medical Systems, Inc.,

802 F. Supp. 1126 (D. Del. 1992) (citing Monell v. Dept. of Social Services, 436 U.S. 658 (1978)). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.'" Whalen v. Correctional Medical Services, et al., 2003 U.S. Dist. LEXIS 21334 (citing Miller, 802 F. Supp. at 1132)). (Attached as Exhibit "6").

19.    "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id.

20.    "To state a claim, plaintiff would have to demonstrate that CMS has a policy or custom of not providing necessary medical care to inmates." Whalen, C.A. No. 02-246-JJF Mem. Op. at 4. See Exhibit "6". "CMS would not be liable unless it had a policy or custom that encouraged or otherwise caused its physicians to not provide such necessary services." Id.

21.    In this case, Plaintiff has not alleged, and, even if he had, he cannot prove any set of facts that would demonstrate that CMS had a policy or custom that led the medical staff to deprive him of necessary medical care.

22.    Moreover, CMS cannot be held responsible for the acts of its employees under a theory of respondeat superior in an action under the Eighth Amendment. Private corporations that provide medical services for the State cannot be held liable under a theory of respondeat superior. Swan v. Daniels, 923 F. Supp. 626, 633 (D. Del. 1995); Miller v. Correctional Medical Systems, Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992). For a plaintiff to prevail, the defendant must have personal involvement in the alleged wrong; "liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d. 1195, 1207 (1988).

23.    A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.  Fed. R. Civ. P. 12(b)(6).  Even a pro se litigant must plead sufficient facts to sustain a legal claim.  <u>See</u> <u>Riddle v. Mondragon</u>, 83 F. 3d 1197, 1202 (10th Cir. 1996).  As a matter of law, plaintiff's claims against defendant, CMS, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

WHEREFORE, defendant, CMS, moves this Honorable Court to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:  _/s/ Eric Scott Thompson_____
     KEVIN J. CONNORS, ESQ.
     DE Bar ID: 2135
     ERIC SCOTT THOMPSON, ESQ.
     DE Bar ID: 4633
     1220 North Market Street, 5th Fl.
     P.O. Box 8888
     Wilmington, DE 19899-8888
     Attorneys for Defendant, CMS

DATED: April 19, 2006

\15_A\LIAB\ESTHOMPSON\LLPG\422298\ESTHOMPSON\13252\00177

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the **MOTION OF DEFENDANT, CMS, TO**

**DISMISS PLAINTIFF'S COMPLAINT** has been served on all counsel of record via electronic

service through ECM/ECF and that two (2) copies have been served by regular mail to:

Jesus Diaz
SBI # 474251
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977


                                    MARSHALL, DENNEHEY, WARNER,
                                    COLEMAN & GOGGIN

                        BY:    _/s/ Eric Scott Thompson_____
                                    KEVIN J. CONNORS, ESQ.
                                    DE Bar ID: 2135
                                    ERIC SCOTT THOMPSON, ESQ.
                                    DE Bar ID: 4633
                                    1220 North Market Street, 5th Fl.
                                    P.O. Box 8888
                                    Wilmington, DE 19899-8888
                                    Attorneys for Defendant, CMS.

DATED:  April 19, 2007

\15_A\LIAB\ESTHOMPSON\LLPG\422298\ESTHOMPSON\13252\00177

EXHIBIT 1

(Rev. 3/01)

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(1) Jesus Diaz # #74251
(Name of Plaintiff)        (Inmate Number)

D.C.C. 1181 Paddock Rd.
(Complete Address with zip code)

(2) Smyrna DE 19977
(Name of Plaintiff)        (Inmate Number)

06 - 550

(Case Number)
( to be assigned by U.S. District Court)

_____
(Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1) Thomas Carroll (warden)
(2) C.MS. Correctional Medical Service
(3) Cpl. Merson, I.G.C.
(Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

**CIVIL COMPLAINT**

• • Jury Trial Requested

I.    PREVIOUS LAWSUITS

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
including year, as well as the name of the judicial officer to whom it was assigned.

NONE _____

_____

_____

_____

_____

_____

(1.)

II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request relief.

A.    Is there a prisoner grievance procedure available at your present institution?  • _Yes_  • •No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?  • _Yes_  • •No

C.    If your answer to "B" is Yes:

1    What steps did you take?  I filed sick call slips and medical grievances

2.    What was the result?  Unresolved, plaintiff in pain with degenerative loss of eyesight.

D.    If your answer to "B" is No, explain why not:  N/A

III.    DEFENDANTS (in order listed on the caption)

(1) Name of first defendant:  Thomas Carroll

Employed as  Warden  at  D.C.C.

Mailing address with zip code:  Department of Correction) 245 McKee Rd Dover De. 19901

(2) Name of second defendant:  C.M.S. Correction Medical Service

Employed as  Medical Staff  at  D.C.C.

Mailing address with zip code:  Correction Medical Service 1201 College Park Dr. Suite 101 Dover De. 19904

(3) Name of third defendant:  Cpl. Merson

Employed as  IGC Chairman  at  D.C.C.

Mailing address with zip code:  Department of Correction) 245 McKee. Rd Dover De. 19901

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

<u>Defendants</u>

(4). Ms. Lee Anne Dunn, employed as medical investigating personel for C.M.S. at D.C.C. 1181 Paddock Road Smyrna, Delaware 1997?

(5.) Ms. Deborah Rodweller, employed as medical investigating personel at D.C.C. 1181 Paddock Road Smyrna Delaware 1997?

(6.) Ms. Cindy Atallian, employed as a Counselor at D.C.C. 1181 Paddock Road Smyrna Delaware 1997?

The plaintiff is holding all the defendants in this civil complaint liable in their individual and official capacity due to the violation of his 8th and 14th constitutional amendment rights.

(5)

## IV. STATEMENT OF CLAIM

Plaintiff claims Thomas Carroll, is the warden of D.C.C. and he is being held liable in his individual and official capacity. Plaintiff claims the warden lacks education and trainning and is constantly violating plaintiff's 8th and 14th constitutional amendment rights by failing to provide adequate medical care or an adequate medical grievance procedure.

Plaintiff claims breach of contract due to Thomas Carroll knowingly and willingly with reckless disregard to plaintiff's health, did enter into a medical contract with C.M.S. knowing the contract was going to be broken, thereby violating 8th and 14th constitutional amendment rights

(4)

Plaintiff claims Thomas Carroll has knowingly, willingly and intentional with a reckless disregard for the plaintiff's health failed and refuse to provide plaintiff with adequate medical care, thereby violating his 8th and 14th constitutional amendment rights and further causing pain and loss of sight in both eyes.

Plaintiff claims Thomas Carroll has knowingly, willingly and intentional failed to do criminal back ground checks on hired employees and this negligence has caused people with criminal records to work at D.C.C. and loose plaintiff's sick call slips and grievance forms thereby causing pain and loss of sight in both eyes and this was a direct violation of plaintiff's 8th and 14th constitutional amendment rights.

(5.)

Plaintiff claims C.M.S. Correction Medical Service did knowingly willingly and intentionally with a reckless disregard to plaintiff's health, did breach the contract to provide adequate medical care to plaintiff, thereby violating his 8th and 14th constitutional amendment rights.

Plaintiff claims C.M.S. did knowingly willingly and intentionally refused and delayed giving plaintiff adequate medical care to his eyes, thereby creating irreparable damage to the plaintiff's eyes causing loss of sight in both eyes.

Plaintiff claims C.M.S. did knowingly willingly and intentionally refused and delayed to give plaintiff medical care due to C.M.S. not wanting to spend money for plaintiff's health care.

(6.)

Plaintiff claims C.M.S. has Knowingly willingly and intentionally failed to do criminal background checks or drug testing on employees and this Negligence has caused people with criminal records and drug addicts to work at D.C.C. and as a direct result of C.M.S.'s negligence, Plaintiff has suffered and continues to suffer from loss of sight in both eyes and pain daily

Plaintiff claims medical malpractice against C.M.S. and D.C.C. due to not getting adequate medical care due to C.M.S. and D.C.C. trying to save money by not giving plaintiff adequate medical care, thereby causing pain and loss of sight in both eyes which also violated plaintiff's 8th and 14th constitutional amendment rights, from 8/29/03 until 8/29/06 C.M.S. has constantly denied and lost plaintiff's paper work for proper medical care.

(7.)

Plaintiff claims Clp. Merson is head
Chairman of the inmates grievance
committee and lacks education and
trainning to be head chairman
of the grievance committee due
to her failure to process the
grievance in accordance with
the laws of Delaware and
the policies and procedures
of D.C.C. from 8/29/03 until the
filing of this complaint

Plaintiff claims Clp. Merson did
intentionally, Knowingly willingly
with reckless disregard to plaintiff
health continue to loose and/or
fail to process plaintiff's medical
grievances, thereby violating
his 8th and 14th constitutional amendment
right, which has caused his medical
care to be delayed, this negligence
has left plaintiff in pain and
loss of sight in both eyes

(8.)

Plaintiff claims Clp. Merson, is negligent and incompetent and has intentionally knowingly, willingly, with a reckless disregard to plaintiff's health block and delay the surgery which has already been ordered thereby violating plaintiff's 8th and 14th constitutional amendment rights

Plaintiff claims Clp. Merson did knowingly intentionally and willingly with a reckless disregard for plaintiff's health failed and refused to honor the request of Cindy Atallian to help plaintiff take care of his medical condition concerning his eyes from 8/29/03 until now this is a direct violation of plaintiff's 8th and 14th constitutional amendment rights, thereby causing paining and suffering as well as damage and loss of sight in both eyes.

(9.)

Plaintiff claims Ms. Lee Anne Dunn, was employed as a medical investigating person for C.M.S., and did knowingly willingly and intentional, breach the contract to provide plaintiff with adequate medical care, on or about 9/13/05

Plaintiff claims Ms. Lee Anne Dunn, lacks education and trainning to be a medical investigating person for C.M.S. at D.C.C. because she refused to follow proper procedures so plaintiff could get adequate medical care for his eyes on or about 9/13/05

Plaintiff claims Ms. Lee Anne Dunn did intentionally knowingly and willingly fail to investigate plaintiff's medical condition, thereby violating plaintiff's 8th and 14th constitutional amendment rights, and caused pain with loss of sight in both eyes.

(10.)

Plaintiff claims Ms Lee Anne Dunn did intentionally knowingly and willingly mislead the grievance board at D.C.C. on 9/13/05 by stating she would make sure plaintiff would begin to get adequate medical care for his eyes, but plaintiff havent, thereby causing him pain and loss of sight in both eyes.

Plaintiff claims Ms Lee Anne Dunn did intentionally knowingly and willingly with a reckless disregard for plaintiff's health, misplace, loose, and stop plaintiff's grievances from going forward so he could get adequate medical care for his eyes, this caused loss of eye sight and pain thereby violating his 8th and 14th constitutional amendment rights.

(11.)

Plaintiff claims Ms. Deborah
Rodweller was employed as a
medical investigator for C.M.S.
when she knowingly willingly
and intentionally breach the
contract to provide plaintiff with
adequate medical care on or about
4/26/06

Plaintiff claims Ms. Deborah Rodweller
lacks education and trainning to be
a medical investigator for C.M.S.
at D.C.C. and due to Ms. Deborah's
lack of education and trainning
plaintiff has suffered and continues
to suffer from pain and loss of
sight in both eyes

Plaintiff claims Deborah Rodweller
did intentionally knowingly and
willingly failed to investigate
plaintiff's medical condition,
thereby violating plaintiff's 8th
and 14th constitutional amendment
rights with pain and loss of sight
in both eyes. (12.)

Plaintiff claims Ms. Deborah Rod-weller did intentionally knowingly and willingly mislead the grievance board at D.C.C. on 4/26/06 by stating she would make sure plaintiff would begin to get adequate medical care for his eyes, but plaintiff haven't, thereby causing him pain and irrepairable damage in both eyes and loss of sight in both eyes.

Plaintiff claims Ms. Deborah Rodweller did intentionally, knowingly and willingly with a reckless disregard for plaintiff's health, when she misplaced, loss and/or stopped plaintiff's grievances from going forward so he could get adequate medical care for his eyes, this caused loss of eyesight, pain and irrepairable damage in both eyes thereby violating his 8th and 14th constitutional amendment rights.

(13.)

Plaintiff claims Ms. Cindy Atallian was counselor at D.C.C., but she lacks education and trainning to be a counselor, due to her failure to follow policies and procedures of D.C.C.

Plaintiff claims Ms. Cindy Atallian failed to honor her position when she violated plaintiff's 8th and 14th constitutional amendment rights

Plaintiff claims Ms. Cindy Atallian interferred with the medical process which caused plaintiffs medical problem to be delayed and denied, which has also caused plaintiff pain and loss of sight in both eyes

(14.)

Plaintiff claims Cindy Atallian did intentionally knowingly and willingly with a reckless disregard for Plaintiffs health failed and/or refused to report the D.C.C. and C.M.S. officials to the propper Delaware authorities due to plaintiff not being provided with adequate care, this was a direct violation of plaintiffs 8th and 14th constitutional amendment rights thereby causing pain and loss of sight in both eyes.

Plaintiff claims Cindy Atallian did intentionally knowingly and willingly with a reckless disregard for plaintiffs health did mislead the plaintiff by stating she would help him get adequate medical care, so plaintiff would delay in filing this civil complaint, which caused pain and irreparable damage in both eyes

(15.)

IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1. Plaintiff claims Breach of Contract against D.C.C. and C.M.S. for failing to provide adequate medical care to plaintiff, thereby violating plaintiff's 8th and 14th constitutional amendment rights.

2. Plaintiff claims medical malpractice due to C.M.S. delaying and denying him adequate medical care which is causing him pain and to loose eyesight in both eyes, which violates his 8th and 14th constitutional amendment rights.

3. Plaintiff claims inadequate medical grievance procedure, which has lost and delayed the grievance process, therefore plaintiff has no other remedy but to go to court.

V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. WHEREFORE, plaintiff humbly pray's this honorable court to grant declaratory judgement for plaintiff against the defendants due to the violation of plaintiff's 8th and 14th constitutional amendment rights.

16

2. Further grant plaintiff punitive —
damages in the amount of —
# 100.000.ºº ONE HUNDRED THOUSAND DOLLARS
againts each defendant involved
in this civil complaint — —

3. Further awarding compensatory damages
in the amount of 100.000.ºº ONE
HUNDRED THOUSAND DOLLARS — —
As well as statutory damages and —
investigation and attorney fees and all other
relief the Court deems just!

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___28___ day of ___August___ 2006

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

17

Certificate of Service

I, _Jesus Diaz_____, hereby certify that I have served a true and correct copy(ies) of the attached: _Civil Complaint  1983_ _____ upon the following parties/person (s):

8 copies

TO: _District Court Clerk_       TO: ___ _____ _____
_U.S. District Court_              _____
_Lockbox 18_____                _____
_Wilmington DE 1980!_         _____
_____ _____              _____


TO: __ _____ _____          TO: __ _____ _____
____ _____ _____            _____
___ _____ _____            _____
___ _____ _____            _____
___ _____ _____            _____


BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road,  Smyrna, DE 19977, postage to be paid by the Dept. Of Corrections.

On this _28_ day of _August_ _____, 2006

                    _Jesus Diaz_____

(18)

I.N. Jesus Diaz

SBI# 422257 UNIT building

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977

Office of the clerk

United States District Court

844 N. King Street, Lockbox 18

Wilmington, Delaware 19801-3570

EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JESUS DIAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-550 SLR |
| | ) | |
| WARDEN THOMAS CARROLL, CMS | ) | JURY TRIAL |
| CORRECTIONAL MEDICAL SERVICE, CPL. | ) | DEMANDED |
| MERSON, LEE ANNE DUNN, DEBORAH | ) | |
| RODWELLER and CINDY ATALLIAN, | ) | |
| | ) | |
| Defendants. | ) | |

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Jesus Diaz v. Warden Thomas Carroll, CMS Correctional Medical
Service, et al.
Civil Action No. 06-550 SLR

V:5_A\IAB\ESTHOMPSON\: LPG\408305\PASHELBY\13252\00178

EXHIBIT 3

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 1 OF 7 |
| | RELATED ACA STANDARDS: 36 | |
| PROCEDURE MANUAL CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT:    INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS | | |
| EFFECTIVE DATE: Revised 5/15/98 | | |

I.    AUTHORITY:  DOC Policy 4.4

II.    PURPOSE:

To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system.  Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed.
NOTE:  Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III.    APPLICABILITY:

All BOP employees, volunteers, persons or organizations conducting business with the BOP; all inmates under BOP custody or supervision.

IV.    DEFINITIONS:

A.    Bureau Grievance Officer (BGO):  A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

B.    Emergency Grievance:  An issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

C.    Grievance:  A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | 4.4 | 2 OF 7 |

D.   Inmate Grievance Chair (IGC):  An institutional employee designated to handle inmate grievances.

E.   Inmate Grievance Procedure (IGP):  The formal process provided to inmates to resolve disputes.

F.   Outside Reviewer:  An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H.   Resident Grievance Committee (RGC):  A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I.   Reprisal:  Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J.   Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

    Health Services Administrator
    Director of Nursing
    Charge Nurse
    Chief Medical Officer
    Medical Records Clerk
    Mental Health Counselor
    Chief Dental Officer
    Dental Assistant

V.   PROCEDURE:

1.   Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2.   All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP.  Inmate complaints regarding policies and conditions must be within DOC jurisdiction.  This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally.  NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP.  Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE BUREAU OF PRISONS SUBJECT: INMATE GRIEVANCE PROCEDURE | PROCEDURE NUMBER: 4.4 | 6 |

recommendation. Decisions by the Bureau Chief of Prisons a
final and not open to grievant interpretation. The Bureau C
of Prisons will return his final decision and the grievance 1
to the IGC for closure and monitoring for issues of complianc

Emergency Grievance:

Issues that concern substantial risk of personal, physical or
psychological inmate injury shall be addressed immediately by t
Warden/Warden's Designee. A copy of the grievance shall be se
to the IGC upon receipt by the Warden/Warden's Designee. And tl
Warden/Warden's Designee shall respond within one calendar day.
Grievant appeals of the Warden/Warden's Designee decision will k
decided by the Bureau Chief of Prisons within one calendar day
upon receipt of the emergency appeal. NOTE: If the
Warden/Warden's Designee should determine that the grievance doe
not meet the emergency criteria, the grievance shall be returned
to the inmate for processing through the normal IGP process
steps.

Medical Grievance:

All medical grievances must be submitted to the Inmate Grievance
Chairperson (IGC) at the respective institution on Form #585.
If, by chance, an inmate sends a grievance directly to the
medical services contractual staff, they are to forward it first
to the IGC who will log it in the institution's grievance log and
then return it to the medical services contractual staff for
action.

The appropriate medical staff will review the grievance and
denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal
resolution with the inmate, upon discussion over the treatment
defined on the Medical Log Form. If the Medical Grievance is
resolved the inmate acknowledges this by his signature on Form
#585 Informal Resolution. This signed form is forwarded to the
IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical
Grievance Committee hearing which will not include any medical
services contractual staff previously involved in the informal
resolution process. The IGC and the inmate must be present at
this hearing.

Resolution closes the case; failure to resolve the case results
in the inmate completing the MGC Appeal Statement section of Form
#585. Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | 7 OF 7 |

Grievance Officer (BGO). The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

Universal Grievance:

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

Institutional Transfer:

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded. If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II. The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review. If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review. Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

Appeals:

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal. This form must be given to the IGC who is responsible for tracking the status of each grievance. The IGC will forward the appeal and grievance file to the BGO. Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level. NOTE: The Bureau Chief of Prisons decisions are final and not appealable.


Attachments

EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NOV 08 2000

William E. O'Neil,               )
                                 )
            Plaintiff,            )
                                 )
      v.                          )
                                 )        C.A. No  99-849-SLR
Rick Kearney, Jean Snyder,       )
Dr. Weiss, Karen Clark,          )
                                 )
            Defendants.           )


## MEMORANDUM ORDER

### I.    INTRODUCTION

William E. O'Neil ("plaintiff") is a Delaware prison inmate incarcerated at Sussex Correctional Institution ("SCI") in Georgetown, Delaware.  The defendants are the prison warden and three employees of Prison Health Services (collectively "defendants").  Plaintiff filed this action under 42 U.S.C. § 1983, asserting that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment for the defendants' failure to protect the plaintiff from an attack by another inmate.  Plaintiff seeks compensatory and punitive damages.  Procedurally, the court is faced with motions to dismiss from defendants.

### II. FACTS

The basis for plaintiff's complaint is the placement of a violent inmate into his infirmary room on November 8, 1997.  Plaintiff was in the SCI infirmary, confined to a wheelchair, for

problems with his feet and legs. Plaintiff's complaint states
that at 4:00 P.M. another inmate, Michael Hall, was brought into
the room with plaintiff. Apparently, Hall had assaulted another
inmate and was transferred to the infirmary for observation.
Plaintiff alleges that Hall has had similar problems in the past
as a result of his failure to take medication. The complaint
maintains that defendant Karen Clark, a psychologist in the ward,
was aware of Hall's problems and directed Hall to be placed in
the room with plaintiff anyway. Plaintiff further maintains that
Dr. Weiss, the mental health supervisor, had been treating Hall
and ordered him to be observed prior to these assaults. At
approximately 3:00 A.M., plaintiff was awakened by kicking and
beating from Hall. As a result, plaintiff required ten stitches.

Plaintiff contends that defendants violated his Eighth
Amendment rights by acting with reckless disregard for his safety
when they placed a violent inmate in his room.

Defendants move to dismiss the complaint for plaintiff's
failure to exhaust administrative remedies as required by 42
U.S.C. § 1997e(a).[1]

---

[1] Defendants also argue that plaintiff has failed to allege
facts which would state a claim for a violation of the Eighth
Amendment and that plaintiff's claim is barred by the applicable
statute of limitations. However, because the case is being
dismissed for plaintiff's failure to exhaust administrative
remedies, no discussion of the merits of plaintiff's claim is
warranted.

2

III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §

1997e(a), provides that

> [n]o action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a
> prisoner confined in any jail, prison, or
> other correctional facility until such
> administrative remedies as available are
> exhausted.

(amended by Pub.L. 104-134, Title I, § 101(a), 110 Stat. 1321-71

(1996)). 18 U.S.C. § 2636(g) defines "prison conditions" as

"...the effects of actions by government officials on the lives

of persons confined in prison...." Actions under this clause

relate to "the environment in which prisoners live, the physical

conditions of that environment, and the nature of the services

provided therein." Booth v. Churner, C.O., 206 F.3d 289, 291

(3rd. Cir. 2000).

Taking all allegations in plaintiff's complaint as true, the

defendants' actions fit under the purview of the statute. The

placement of a violent prisoner in plaintiff's room is certainly

an action that affected the environment in which he lived.

Because the action complained of is a "prison condition,"

plaintiff is required to exhaust administrative remedies, if any

exist, before filing a complaint in federal court.

In the complaint, plaintiff acknowledges that a prisoner

grievance procedure exists but did not file a grievance because

3

"grievance for prisoner and institution matters."[2]  (D.I. 2)  In Booth, the court held that prisoners must exhaust administrative remedies available to them prior to filing a § 1983 action, whether or not the remedies provide the inmate plaintiff with the relief desired.  206 F.3d at 291 (citing Nyhuis v. Reno, 204 F.3d 65, 78 (3rd. Cir. 2000)).  By applying § 1997e(a) without exception, the policies underlying the exhaustion requirements are promoted, that is, the agency involved is given the opportunity to discover and correct its own mistakes and also conserve judicial resources.  Nyhuis, 204 F.3d at 75.

## V. CONCLUSION

Therefore, at Wilmington this 6th day of November, 2000,

IT IS ORDERED that the motions to dismiss filed on behalf of defendants Rick Kearney, Jean Snyder, Dr. Weiss, and Karen Clark are granted.

_____
United States District Judge

---

[2] Presumably this statement evidences that plaintiff thought the grievance process was only for prisoner and institution matters.

4

EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JESUS DIAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-550 SLR |
| | ) | |
| WARDEN THOMAS CARROLL, CMS | ) | JURY TRIAL |
| CORRECTIONAL MEDICAL SERVICE, CPL. | ) | DEMANDED |
| MERSON, LEE ANNE DUNN, DEBORAH | ) | |
| RODWELLER and CINDY ATALLIAN, | ) | |
| | ) | |
| Defendants. | ) | |

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Jesus Diaz v. Warden Thomas Carroll, CMS Correctional Medical
Service, et al.
Civil Action No. 06-550 SLR

\15_A\LIAB\ESTHOMPSON\LLPG\408305\PASHELBY\13252\00178

EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JESUS DIAZ,                                )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )        Civ. No. 06-550 SLR
                                           )
WARDEN THOMAS CARROLL, CMS                 )        JURY TRIAL
CORRECTIONAL MEDICAL SERVICE, CPL.         )        DEMANDED
MERSON, LEE ANNE DUNN, DEBORAH             )
RODWELLER and CINDY ATALLIAN,              )
                                           )
          Defendants.                      )

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Jesus Diaz v. Warden Thomas Carroll, CMS Correctional Medical
Service, et al.
Civil Action No. 06-550 SLR

\15_A\LIAB\ES THOMPSON\LLP\640R305\PASHELBY\13252\00178

EXHIBIT 7

LEXSEE 2005 DEL SUPER LEXIS 87

**McBride v. Shipley Manor Health Care, et al.**

**C.A. No. 04C-06-291-FSS**

**SUPERIOR COURT OF DELAWARE, NEW CASTLE**

*2005 Del. Super. LEXIS 87*

**March 23, 2005, Decided**

**NOTICE:** [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**DISPOSITION:** Allowance of Plaintiffs to submit an Affidavit of Merit.

**COUNSEL:** Edward J. Fornias, III, Esquire, Roeberg Moore & Friedman, P.A., Wilmington, DE.

Thomas J. Gerard, Esquire, Marshall Dennehey Warner, Coleman & Goggin, Wilmington, DE.

**JUDGES:** Fred S. Silverman, Judge.

**OPINION BY:** Fred S. Silverman

**OPINION:**

This formally and definitively decides Defendant, Shipley Manor's Motion to Dismiss, which was based on Plaintiffs' failure to submit an Affidavit of Merit. The question presented is whether the recently enacted Affidavit of Merit requirement n1 applies to lawsuits brought against skilled nursing home facilities, including Shipley Manor.

n1 *18 Del. C. § 6853.*

As you will recall, the court addressed the issue preliminarily in its letter dated August 27, 2004. The court inquired as to whether Defendant is licensed under Title 24, excluding Chapter 11 to provide health care professional services. In response, by letter dated [*2] September 1, 2004, Defendant produced its "State of Delaware, Department of Health and Social Services License to operate an eighty-two bed Skilled Nursing Facility."

Under *18 Del. C. § 6853(a)*, no "health care negligence lawsuit" shall be filed in Delaware unless the complaint is accompanied by an Affidavit of Merit, signed by an expert witness. "Health care" means any act or treatment furnished by any health care provider on behalf of a patient during the patient's confinement. *18 Del. C. § 6801(4)*. Under *18 Del. C. § 6801(5)*, a "health care provider" is a corporation "licensed by this State pursuant to . . . Title 16 to provide health care or professional services." Moreover, under *18 Del. C. § 6801(7)*, "Medical Negligence" means any tort based on health care professional services rendered.

Taking the complaint's allegations, the undisputed fact that Defendant is a licensed skilled nursing home facility under Title 24, and *Title 18 § 6801* into account, the court finds that this is a health care negligence lawsuit and Defendant is a health care provider. Accordingly, *18 Del. C. § 6853* applies and Plaintiffs cannot proceed unless they file the statutorily [*3] required Affidavit of Merit.

In reaching this conclusion, the court is relying on the undisputed facts and the statute's plain language. The court's conclusion, however, is supported by common sense. Basically, Plaintiffs allege negligent nursing care by Defendant. Eventually, Plaintiffs will have to present expert testimony on the standard of care. A jury cannot decide, on its own, the standard of care for a nursing

home. Accordingly, Plaintiffs will have to produce an expert sooner or later. It is consistent with the General Assembly's intent when it enacted the Affidavit of Merit requirement to require Plaintiffs to produce an expert sooner, rather than later.

Consistent with the penultimate paragraph of the court's August 27, 2004 letter, the court is allowing Plaintiffs to submit an Affidavit of Merit. And also consistent with the letter, the court is imposing a short deadline for Plaintiffs to comply with the Affidavit of Merit requirement. Plaintiffs have had since August 27, 2004, at the earliest, and September 1, 2004, at the latest, to line-up their expert.

For the foregoing reasons, the complaint shall be dismissed twenty-one (21) days from this order's date, unless before [*4] the twenty-first day, Plaintiffs submit an Affidavit of Merit. Plaintiffs are further cautioned that the court does not anticipate providing another grace period if Plaintiffs miss the deadline imposed here, or the Affidavit of Merit is unsatisfactory. n2 Finally, if Plaintiffs submit an Affidavit of Merit before the deadline, the court will review it *sua sponte*.

n2

> *See e.g. Ellett v. Ramzy,* Del. Super., C.A No. 04C-03-201, Silverman, J. (Sept. 29, 2004) (ORDER); *see also Bell v. Yalamanchilli,* Del. Super., C.A. No. 03C-11-046, Johnston, J. (Mar. 25, 2004) (ORDER).

**IT IS SO ORDERED.**

Judge Fred S. Silverman