IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JESUS DIAZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-550-SLR |
| | ) |
| WARDEN THOMAS CARROLL, | ) |
| CORRECTIONAL MEDICAL | ) |
| SERVICES, CPL. MERSON, | ) |
| LEE ANNE DUNN, DEBORAH | ) |
| RODWELLER, and CINDY | ) |
| ATALLIAN, | ) |
| | ) |
| Defendants. | ) |

Jesus Diaz, Delaware Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Eric Scott Thompson, Esquire, of Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Counsel for Defendants Lee Anne Dunn, Deborah Rodweller, and Correctional Medical Services.

**MEMORANDUM OPINION**

Dated: July [?], 2007
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On September 5, 2006, Jesus Diaz ("plaintiff"), a pro se plaintiff proceeding in forma pauperis, filed the present action against Thomas Carroll ("Carroll"), the Warden of Delaware Correctional Center ("DCC"); Cpl. Merson ("Merson"), head of the Inmate Grievance Committee ("IGC"); Correctional Medical Services ("CMS"); Lee Anne Dunn ("Dunn") and Deborah Rodweller ("Rodweller"), medical investigators for CMS; and Cindy Atallian ("Atallian"), a counselor at DCC. (D.I. 2) Plaintiff's complaint alleged failure to provide adequate medical care, resulting in violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983. (Id.) Plaintiff also included supplemental claims of breach of contract and medical malpractice under Delaware law. (Id.) Finally, plaintiff made allegations regarding the inadequacy of DCC's internal grievance system. (Id.) Plaintiff requests $100,000 in punitive damages from each defendant, $100,000 in compensatory damages, related court expenses, and any other relief that the court deems just. (D.I. 2 at 17)

On December 14, 2006, the court issued an order dismissing plaintiff's claim as it related to DCC's grievance system, as well as his medical malpractice claim, for failure to state a claim upon which relief could be granted.[1] (D.I. 7) On December 22, 2006, plaintiff filed a motion to appoint counsel due to his poor eyesight[2] (allegedly

---

[1] Plaintiff's allegations regarding the constitutionality of DCC's grievance system were dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). (D.I. 7) Plaintiff's state law medical malpractice claims were dismissed for failure to include an affidavit of merit signed by an expert, as required by the Delaware Health Care Negligence Insurance and Litigation Act, 18 Del. C. § 6801. (Id.)

[2] Plaintiff states that "at times he is considered completely and legally blind" (D.I. 8 at ¶ 3); he has not, however, submitted any evidence to support this assertion.

caused by the poor medical care described in the complaint) and increasing inability to adequately defend himself as the litigation at bar progresses.[3] (D.I. 8) On March 12, 2007, Dunn and Rodweller filed a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 15) On April 19, 2007, CMS filed a similar motion. (D.I. 20) These motions to dismiss, along with plaintiff's motions to appoint counsel, are presently before the court. The court has jurisdiction over the suit at bar pursuant to 28 U.S.C. §§ 1331(a), 1343, and 1367. For the reasons that follow, the court will grant the motions to dismiss and deny without prejudice plaintiff's motions to appoint counsel.

## II. BACKGROUND

Plaintiff, an inmate at DCC, submitted a sick call request on August 29, 2003, complaining of severe pain in his left eye and degenerative loss of eyesight. (D.I. 2, ex. D) On September 6, 2005, over two years later, plaintiff submitted a grievance report claiming that his sick call request had gone unanswered. (D.I. 2, ex. A) In this grievance report, plaintiff complained of "a type of growth" which had begun in his left eye and spread to his right eye, causing him severe pain. (Id.) Dunn investigated the matter and, on September 21, 2005, she and plaintiff signed an "informal resolution" indicating that plaintiff would begin to receive treatment. (D.I. 16, ex. A) On December 5, 2005, plaintiff submitted another sick call request, complaining that he had not received any care following his earlier sick call request and grievance report. (D.I. 2, ex. C) On January 19, 2006, DCC counselor Atallian wrote to plaintiff, informing him

---

[3]Plaintiff filed another such motion on July 17, 2007. (D.I. 25)

2

that the medical staff was aware of his problems and that details for his proposed care were being worked out. (D.I. 2, ex. E) On April 13, 2006, plaintiff filed another grievance report claiming that his previous grievances and sick call slips had been ignored. (D.I. 2 ex. B) Rodweller was assigned to investigate the matter. (Id.) On May 22, 2006, Dr. Markowitz from Delaware Eye Center examined plaintiff and gave him a prescription for Patanal with five refills. (D.I. 16, ex. 5) On July 10, 2006, Markowitz saw plaintiff again and gave him a prescription for five 10 ml single-use injection vials of sterile Fluorouracil. (Id.) On October 4, 2006, Markowitz operated on plaintiff[4] and gave him Percoset and Voltaren, each with two refills. (Id.) Plaintiff continued to experience pain following the operation; he was seen by Markowitz on November 17, 2006 for a follow-up appointment. (Id.)

Plaintiff bases his § 1983 claims against all of the defendants on allegations of deliberate indifference to plaintiff's pain and suffering from August 29, 2003 (the date of his first sick call request) through May 22, 2006 (the date on which plaintiff first saw Dr. Markowitz). Plaintiff avers that this thirty-three month delay in treatment was caused not by medical concerns, but by defendants' unwillingness to spend the money necessary for proper treatment. (D.I. 2 at 6)

In their respective motions to dismiss, Dunn, Rodweller, and CMS contend that plaintiff has not satisfied his burden of exhausting all available administrative remedies before filing suit, as is required by the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a). (D.I. 15 at 2; D.I. 20 at 2) The moving defendants also claim

---

[4]Specifically, plaintiff underwent excision of pterysium of his left eye. (D.I. 16, ex. 5)

3

that plaintiff has failed to meet his burden of showing acts or omissions that demonstrate deliberate indifference to serious medical needs. (D.I. 15 at 4; D.I. 20 at 4) More specifically, CMS claims that plaintiff has not identified any policy or custom of CMS's that demonstrates deliberate indifference to serious medical needs; without such, CMS points out, it cannot be held liable for the actions of its employees. (D.I. 20 at 6-7)

### III. STANDARD OF REVIEW

Because the parties have referred to matters outside the pleadings, defendants' motions to dismiss shall be treated as motions for summary judgment. See Fed. R. Civ. P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to

4

the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Under the PLRA, an inmate must exhaust his administrative remedies before filing a challenge "with respect to prison conditions under [§] 1983 . . . or any other federal law," 42 U.S.C. § 1997(e)(a), even if the ultimate relief sought is not available through the grievance process. See Booth v. Churner, 206 F.3d 289, 299-300 (3d Cir. 2000), aff'd, 532 U.S. 731 (2001). The moving parties claim that plaintiff has failed to exhaust the administrative remedies available to him because he did not appeal any of his grievance reports. (See D.I. 15, ex. 3 at 7) While the DCC grievance procedure requires a prisoner to file an appeal if he is unsatisfied with the results of a medical grievance hearing (Id. at 6-7), plaintiff claims that the entire grievance procedure is inadequate. (D.I. 2 at 16) Plaintiff also claims that his grievances, with the exception of the one informal resolution (See D.I. 16, ex. A), were ignored. Despite the assurance of future medical care included within the informal resolution (See D.I. 2 ex. A), plaintiff

alleges that he still did not receive medical care. (D.I. 2 at 10-11)

Plaintiff asserts, and defendants do not deny, that he filed multiple sick call slips and grievances concerning his medical condition. The record also is undisputed that almost three years passed between plaintiff's first sick call request and his first examination by an eye specialist. Nonetheless, defendants argue that plaintiff's case should be dismissed because he did not "appeal" any of his grievances. It is unclear to the court, however, how one appeals from an absolute failure to respond. The court concludes, therefore, based on the record as it stands, that the motion to dismiss based on a failure to exhaust administrative remedies should be denied.

### B. Eighth Amendment Claim Under 42 U.S.C. § 1983

#### 1. Dunn and Rodweller

To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must demonstrate that: (1) he had a serious medical need; and (2) the defendant was aware of this need and was deliberately indifferent to it. See West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978); see also Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987). Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. See Estelle, 429 U.S. at 105.

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that

is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id. (citations omitted).

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate "'to undue suffering or the threat of tangible residual injury.'" Id. at 346 (citation omitted). Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. See id. at 347. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

The record demonstrates that plaintiff suffered from a serious medical need. However, the court concludes that there is no legal basis to conclude that either Dunn or Rodweller were deliberately indifferent to plaintiff's serious medical needs. In this

7

regard, the court understands that both Dunn and Rodweller were "medical investigators," not medical care-givers. Dunn investigated plaintiff's September 2005 grievance, and entered into an "informal resolution" whereby plaintiff was to begin receiving medical treatment. Because medical personnel were aware of plaintiff's problems and working out a treatment plan at least by December 2005, the court concludes that Dunn cannot be deemed to have been "deliberately indifferent." Likewise, because Rodweller investigated plaintiff's April 2006 grievance and plaintiff was examined by a specialist in May 2006, there is no legal basis for finding an Eighth Amendment violation stemming from Rodweller's conduct.

### 2. CMS

CMS correctly asserts that, as a private corporation providing medical services, it cannot be held liable under a theory of respondeat superior for deliberate indifference to plaintiff's serious medical needs without evidence that it had a policy or custom demonstrating such deliberate indifference. See Miller v. Corr. Med. Sys., Inc., 802 F. Supp. 1126, 1131-32 (D. Del. 1992) (citing Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658 (1978)). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" Id. at 1132 (alteration in original) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (citations omitted). Plaintiff has alleged that CMS declined to spend the money for proper treatment; given the need for an eye specialist in plaintiff's case, his allegation is

8

sufficient to withstand CMS's motion to dismiss.

### C. Plaintiff's Breach of Contract Claim

Under Delaware law, no healthcare negligence lawsuit can be filed unless the complaint includes "[a]n affidavit of merit as to each defendant signed by an expert witness."[5] 18 Del. C. § 6853(a)(1). Delaware law defines medical negligence as "any tort or **breach of contract** based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient." Id. In the case at bar, plaintiff's breach of contract claim is based on defendants' "failure to provide adequate medical care" (D.I. 2 at 16); it qualifies, therefore, as part of a healthcare negligence lawsuit. Plaintiff submitted no affidavit of merit along with his complaint, as required by Delaware law. Therefore, the court dismisses plaintiff's breach of contract claims against the moving parties for failure to comply with the State of Delaware's statutory requirements.

### D. Plaintiff's Motion for Counsel

A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel in a civil case. See Ray v.Robinson, 640 F.2d 474, 477 (3d Cir. 1981); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion, however, to appoint counsel for plaintiff, but this effort is usually made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without

---

[5]The expert witness must affirm "that there are reasonable grounds to believe that there has been healthcare medical negligence committed by each defendant." 18 Del. C. § 6853(a)(1).

9

such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993) (appointment of counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law). At this time, the court finds that plaintiff has capably been representing himself, and sees no special circumstances requiring the appointment of counsel; however, should circumstances change, plaintiff may file another such motion at that time.

## V. CONCLUSION

For the above reasons, the court grants Dunn's and Rodweller's motion to dismiss, denies CMS's motion to dismiss, and denies without prejudice plaintiff's motion to appoint counsel. An appropriate order shall issue.