## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JESUS DIAZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-550-SLR |
| | ) |
| WARDEN THOMAS CARROLL, | ) |
| CORRECTIONAL MEDICAL | ) |
| SERVICES, INC., CPL MERSON, and | ) |
| CINDY ATALLIAN, | ) |
| | ) |
| Defendants. | ) |

Jesus Diaz, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Stacey X. Stewart, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Thomas Carroll, Cpl. Merson, and Cindy Atallian.

Eric Scott Thompson and Kevin J. Connors, Esquires, Marshall, Dennehey, Warner, Coleman & Goggin. Counsel for Defendant Correctional Medical Services, Inc.

## **MEMORANDUM OPINION**

Dated: July 𝟛𝟠, 2008
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Jesus Diaz ("plaintiff"), an inmate at the James T. Vaughn Correctional

Center, formerly known as the Delaware Correctional Center ("DCC"), filed this civil

rights complaint pursuant to 42 U.S.C. § 1983. Presently before the court are motions

for summary judgment filed by State defendants former Warden Thomas Carroll

("Carroll"), Corporal Lise Merson ("Merson"), and Cindy Atallian ("Atallian") (collectively,

"State defendants") and defendant Correctional Medical Services, Inc. ("CMS") with

supporting memoranda and plaintiff's response thereto. (D.I. 55, 61) Also before the

court is plaintiff's motion to amend. (D.I. 64) For the reasons set forth below, the court

will grant the motions for summary judgment and will deny plaintiff's motion to amend.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff alleges that defendants failed to provide adequate medical care in

violation of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983. He

also alleges a supplemental claim of breach of contract under Delaware law.[1]  Plaintiff

bases his claims on acts occurring from August 29, 2003 until the date he filed his

complaint, August 28, 2006. (D.I. 2) Plaintiff recently filed a motion to amend the

complaint to add three new defendants. (D.I. 64) Defendants object to an amendment.

Plaintiff alleges that Carroll, CMS, Merson, and Atallian failed, blocked and/or

refused to provide him adequate medical care. (D.I. 2 at 4, 6, 9, 14) He claims that, as

a third-party beneficiary, he was injured by Carroll 's breach of contract to provide

medical services to inmates. (D.I. 2 at 4, 6, 10, 12) He also claims that Carroll and

---

[1]The court has dismissed the grievance claim and medical malpractice claim as
to all defendants, and as to CMS, the breach of contract claim. (D.I. 7, 26)

CMS negligently hired employees with criminal records. (D.I. 2 at 5, 7)

Plaintiff alleges that Merson blocked and delayed his scheduled surgery and refused to honor Atallian's request to help plaintiff take care of his medical condition. (D.I. 2 at 9) Plaintiff alleges that Atallian refused to report to the appropriate officials that plaintiff was not being provided adequate care, and misled plaintiff when she advised him she would help him receive adequate medical care so that plaintiff would delay filing this lawsuit. (D.I. 2 at 15)

Plaintiff first noticed something wrong with his eyes in 2003. (D.I. 61, ex. 1, 45) At the time, CMS was not the medical provider. In August 2003, plaintiff filed a sick call slip regarding eye issues and the medical provider at that time, First Correctional Medical ("FCM"), scheduled plaintiff for an appointment. (D.I. 56, exs. B, C) Plaintiff received medical care for his eyes on September 10, 2003 and on October 2, 2003, and a consult request was written. (D.I. 57, ex. A) He submitted a sick call slip on December 13, 2003, and requested a specialist appointment due to eye pain. (Id. at ex. C) On December 18, 2003, FCM issued a consult request for an eye examination. (Id. at ex. A)

On March 10, 2004, plaintiff was seen by medical regarding his eyes and medical submitted a consult request for an eye exam. (D.I. 57, at exs. A, B). One year later, on May 1, 2005, plaintiff submitted a sick call request, again complaining about his eyes. (Id. at ex. C) He submitted another request on May 16, 2005, again making eye complaints. (D.I. 62, ex. 3) A consult request was re-faxed by medical staff on May 20, 2005, as it was "never done". (Id.)

CMS began providing medical services on July 1, 2005. On September 6, 2005,

-2-

plaintiff filed a grievance complaining that since August 2003 he had made complaints about his eyes, but had yet to see a doctor. (D.I. 56, ex. E) Plaintiff accepted an informal resolution and signed off on this grievance on September 21, 2005. (Id.) The resolution indicated that plaintiff would receive treatment, as well as follow-up every two months. (Id.) The matter was finally resolved on December 5, 2005. (Id.)

On December 5, 2005, plaintiff submitted a sick call slip complaining that he was suffering from "xerophthalmia".[2] (D.I. 57, ex. C) CMS faxed a consult request with an optometrist/ophthalmologist on December 27, 2005. (Id. at ex. A)

Plaintiff testified that in 2004 he say "many, many nurses." (D.I. 61, ex. 1, 55) Similarly, in 2005 he saw many nurses. (Id.) When he was seen by the nurses "everything was about [his] eyes." (Id.)

On January 19, 2006, Atallian advised plaintiff by letter that she had discussed his eye concerns with medical staff and was told the staff was aware of his problem and that plaintiff should await an appointment/referral to an eye specialist. (D.I. 56, ex. I) On February 8, 2006, Atallian received a letter from plaintiff complaining about his eyes and, on February 23, 2006, she asked medical to review the letter. (Id.) On March 8, 2006, Atallian advised plaintiff that she had discussed his eye problems with medical. (Id.) During his deposition, plaintiff testified that he did not know why he sued Atallian, but that she "got caught up in the mix" because she was his counselor. (D.I. 61, ex. 1, 44) He did not believe that she did anything to violate his rights. (Id. at 45)

Plaintiff received eye care on March 14, 2006 (D.I. 57, ex. B) On March 27,

_____

[2]Plaintiff's cellmate made this diagnosis using a medical dictionary. (D.I. 61, ex. 1, 102-103)

-3-

2006, medical staff and the medical director signed off on a consult request. (D.I. 57, ex. A) The presumed diagnosis was pterygium bilaterally.[3] Additional information was requested a few days later. (Id.)

Plaintiff filed a grievance on April 13, 2006 and it was submitted to the medical unit for review on April 26, 2006. (D.I. 56, ex. F) The grievance went through several levels of review with a finding to review the chart and follow up with a physician as to procedures ordered or needed to be ordered. (Id.) Plaintiff did not appeal and the grievance status was considered as withdrawn. (Id.)

Plaintiff submitted two grievances on May 3 and 12, 2006 complaining of lack of treatment or improper medical care for the growth on his eyes. (Id. at exs. G, H) The May 3, 2006 grievance was returned and plaintiff was instructed to follow procedure and file a sick call slip. (Id. at ex. G) The May 12, 2006 grievance resulted in a treatment plan, but plaintiff refused to sign off on the plan because he did not agree with it. (Id. at ex. H) Plaintiff did not appeal the May 12, 2006 grievance and it was considered withdrawn. (Id.) Plaintiff testified that he did not appeal any of his grievances (D.I. 62, ex. 1 at 3, 95)

Plaintiff was seen by Dr. Gary Markowitz, an ophthalmologist, on May 22, 2006 and again on July 10, 2006. (D.I. 57, ex. A). He was next seen by Dr. Markowitz on October 4, 2006 for a surgical excision of pterygium on his left eye. (Id.) Plaintiff does not agree with the treatment he has received, and believes that he received improper

---

[3]An abnormal mass of tissue arising from the conjunctiva of the inner corner of the eye that obstructs vision by growing over the cornea. The American Heritage Stedman's Medical Dictionary 681 (2d ed. 2004).

-4-

treatment. (D.I. 61, ex. 1 at 91-94, 100-101). Plaintiff testified that he was never told by a doctor that he had vision problems as a result of the growth on his eye. (Id. at 56-57) Plaintiff has been medically treated numerous times subsequent to October 4, 2006, but said treatment is irrelevant inasmuch as he limited his claims from August 29, 2003 to the date that he filed his complaint – August 28, 2006.

Plaintiff testified that he did not know Merson and probably sued her because she was in a higher position. (D.I. 61, ex. 1, 20) When asked what Merson did to violate his rights, plaintiff replied, "who is she?" (Id. at 70) Plaintiff sued Carroll for "being irresponsible for ignoring" him for almost four years. (Id. at 18) Plaintiff did not write to Carroll, or otherwise communicate with him, but believes that because he was the warden he should have knowledge of all inmates' medical records and medical care and should have known about his eye problems. (Id. at 18-19, 64-65)

## III. MOTION FOR SUMMARY JUDGMENT

State defendants move for summary judgment on the bases that plaintiff cannot establish an Eighth Amendment claim against them; the breach of contract claim cannot survive summary judgment without an affidavit of merit; plaintiff failed to exhaust his available administrative remedies pursuant to 42 U.S.C. § 1997e; and they are immune from suit. CMS moves for summary judgment on the bases that plaintiff cannot establish an Eighth Amendment claim against it and plaintiff has failed to exhaust his administrative remedies.

Plaintiff did not respond to State defendants' motion for summary judgment. He opposes CMS' motion and argues that there is a genuine issue of material fact whether he has an eye injury/ailment and if the injury/ailment is so obvious that a lay person

would easily recognize the need for a doctor's attention.

## A. Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Indeed, to survive a motion for summary judgment, plaintiff cannot rely merely on the unsupported

allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## B. Discussion

### 1. Respondeat Superior/Personal Involvement

State defendants argue that plaintiff's claims against them fail because they were not personally involved in the alleged wrongs and their liability cannot be based upon respondeat superior. Plaintiff did not respond to State defendants' motion.

Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. See Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978). Liability in a § 1983 action, however, cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted). Regardless, a plaintiff may set forth a claim for supervisory liability under § 1983 if he "(1) identif[ies] the specific supervisory practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure."

-7-

Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)). It is not enough for a plaintiff to argue that the alleged injury would not have occurred if the supervisor had "done more." Id. He must identify specific acts or omissions of the supervisor that evidence deliberate indifference and establish a link between the act or omission and the ultimate injury. Id.

It is apparent from plaintiff's testimony that Merson and Carroll had no personal involvement in plaintiff's alleged constitutional deprivations and are named as defendants solely based upon their supervisory positions. Indeed, plaintiff testified that he had no contact with either Merson or Carroll. Plaintiff believes that Carroll should have been aware of his medical condition. Although plaintiff filed several grievances, participation in the after-the-fact review of a grievance is not enough to establish personal involvement. See, e.g., Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). See also Cole v. Sobina, Civ. No. 04-99J, 2007 WL 4460617 (W.D. Pa. 2007); Ramos v. Pennsylvania Dep't of Corr., Civ. No. 06-1444, 2006 WL 2129148 (M.D. Pa. 2006) and Jefferson v. Wolfe, Civ. No. 04-44 ERIE, 2006 WL 1947721 (W.D. Pa. 2006). Cf. Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Further, the record does not support a finding that Atallian had any personal involvement in any constitutional deprivation. To the contrary, the record indicates that Atallian attempted to aid plaintiff in obtaining medical care. Plaintiff does not know why

-8-

he sued her and testified that she did not violate his constitutional rights. For the foregoing reasons, the court will grant State defendants Carroll, Merson, and Atallian summary judgment on the bases of respondeat superior and lack of personal involvement.[4]

## 2. Medical Needs

CMS contends that plaintiff does not have a serious medical need and, even if he did, its conduct does not demonstrate deliberate indifference. Plaintiff responds that his eye injury/ailment is so obvious that a layperson would easily recognize the need for a doctor's attention.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must prove (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long

---

[4]The court sees no need to address the exhaustion and immunity issues raised by State defendants.

as the treatment provided is reasonable. Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. Estelle v. Gamble, 429 U.S. 97, 107 (1976). Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); see also Daniels v. Williams, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989); Miller v. Correctional Med. Sys., Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CMS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories). Assuming the acts of a CMS employee have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee

-10-

works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. See Natale, 318 F.3d at 584 (citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" Miller v. Corr. Med. Sys., Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (citing Andrews, 895 F.2d at 1480; Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Plaintiff testified that during 2004 and 2005 he was seen by numerous nurses regarding his eye complaints. In May 2005, prior to the time that CMS was the medical provider, plaintiff submitted a sick call request seeking medical treatment. CMS became the medical provider in July 2005. A few months later, in September, plaintiff submitted a grievance complaining that had not seen a doctor since 2003. There was almost an immediate informal resolution of the grievance. When plaintiff submitted a sick call slip in early December, three weeks later CMS sought a consultation with an eye doctor. After a three month delay from the December request, in early March plaintiff received medical treatment and medical submitted a second request for a consultation. There was a prompt response to plaintiff's April grievance regarding the treatment plaintiff needed. A May grievance resulted in a treatment plan, but plaintiff did

not agree with it. Finally, the consulting ophthalmologist provided medical care in May
and July, performed a surgical procedure on plaintiff's eyes in October 2006, and
plaintiff received follow-up care. Nonetheless, plaintiff is not satisfied with the treatment
rendered by Dr. Markowitz.

From the record it appears that plaintiff did not receive medical care during a
three month period despite his requests. Nonetheless, even construing the facts in the
light most favorable to plaintiff, the evidence shows that at most, CMS may have been
negligent in not responding immediately to plaintiff's request for medical treatment.
Negligence, however, if it exists and is proven, does not rise to the level of a
constitutional violation. See Estelle, 429 U.S. at 107; Rouse, 182 F.3d at 197.
Moreover, while plaintiff complained in September 2005 that had not received treatment
from a physician, he acknowledged that he was seen by many nurses in 2004 and
2005. Further, save the three months previously mentioned, plaintiff has received
continual treatment for his eyes, albeit not to his liking. Plaintiff has failed to make a
sufficient showing as to necessary elements of his constitutional claims for deliberate
indifference to a serious medical need. Accordingly, the court will grant CMS' motion for
summary judgment as to this issue.[5]

## C. Breach of Contract

The court dismissed plaintiff's breach of contract claims raised against CMS[6]

_____

[5]The court will not address the exhaustion issue raised by CMS, but notes that it
appears plaintiff failed to exhaust his administrative remedies. Plaintiff testified that he
did not appeal any decisions of the grievances he submitted.

[6]CMS discusses the breach of contract claim in its current motion for summary
judgment.

-12-

following the filing of its motion to dismiss. (D.I. 26) State defendants Carroll, Merson, and Atallian were not parties to the motions. They now move for summary judgment on the breach of contract claims raised against them.

As previously determined by this court, "plaintiff's breach of contract claim is based on defendants' 'failure to provide adequate medicare' (D.I. 2 at 16); it qualifies, therefore, as part of a healthcare negligence lawsuit." (D.I. 26) In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. 18 Del. C. §§ 6801-6865. Because plaintiff alleges medical negligence, at the time he filed the complaint he was required to submit an affidavit of merit as to each defendant signed by an expert witness. 18 Del. C. § 6853(a)(1). He failed to comply with this requirement. Accordingly, the court will grant State defendants' motion for summary judgment.

## IV. MOTION TO AMEND

Plaintiff moves to amend his complaint to add three new defendants: Chad Bar ("Bar"), regional director for CMS; James Welch ("Welch"), DOC Director of Health Care Services; and Dr. Markowitz, the physician who treated him. (D.I. 64) CMS and State defendants argue that amendment is improper because plaintiff was aware of the identify of proposed defendants at time he filed his complaint, the motion is untimely, and amendment is futile.

"After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.'" Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). The Third Circuit has adopted a liberal approach

to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chemical Co., 921 F.2d 484, 486-87 (3d Cir. 1990) (citations omitted). Amendment, however, is not automatic. See Dover Steel Co., Inc. v. Hartford Accident and Indem., 151 F.R.D. 570, 574 (E.D. Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); See also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990).

Plaintiff's motion is untimely. The discovery deadline expired on November 30, 2007, and the dispositve motion deadline has also passed. (D.I. 28, 60) Further, amendment is futile. Plaintiff seeks to hold Welch liable on the basis of respondeat superior. He alleges Bar is responsible for failing to provide a remedy or solution to plaintiff's medical needs. While he states that he wrote to Welch and Bar about his medical problems, he did not do so until April 8, 2008, the same date that plaintiff filed his motion for leave to amend and well beyond the time frame of the alleged constitutional violations as set forth in the original complaint. Finally, plaintiff's proposed claim against Dr. Markowitz lies in negligence. As previously discussed, plaintiff has not

provided an affidavit of merit as is required by Delaware law. The medical contract claim falls within the ambit of the medical negligence claim and is equally futile.

Amendment of the complaint is inappropriate. There was undue delay in the filing of the motion to amend and amendment is futile. For these reasons, the court will deny the motion to amend.

## V. CONCLUSION

Based upon the foregoing analysis, the court will grant the motions for summary judgment. The court will deny plaintiff's motion to amend. An appropriate order will issue.